UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

RONALD EUGENE DAUGHERTY,

        Plaintiff,                      Case No. 2:20-cv-6

v.                                               Honorable Robert J. Jonker

HEIDI E. WASHINGTON,

        Defendant.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Cooper Street Correctional Facility (JCS) in Jackson, Jackson County, Michigan. The events about which he complains occurred at that facility and at the Newberry Correctional

Facility (NCF) in Newberry, Luce County, Michigan. Plaintiff sues MDOC Director Heidi E. Washington.

In 1995, a jury in Monroe County convicted Plaintiff of Criminal Sexual Conduct in the third degree (CSC-III), in violation of Mich. Comp. Laws § 750.520d(1)(b). The court sentenced Plaintiff as a third habitual offender, Mich. Comp. Laws § 769.11, to a prison term of 16 to 30 years. According to documents Plaintiff has attached to his complaint, Plaintiff was released on parole in 2017. Plaintiff returned to prison in early 2019 after committing parole "violations that included sexual elements." (Compl, ECF No. 1, PageID.7.) In response to the violations, the Michigan Parole Board (MPB) ordered a new risk assessment of Plaintiff. As a result of the risk assessment, MPB instructed Plaintiff to complete the Michigan Sex Offender Program (MSOP).

The MSOP was created in 2012, nearly 17 years after Plaintiff's 1995 conviction for CSC-III. Plaintiff asserts that he completed MSOP in December 2014.[1] Having completed the MSOP once before, Plaintiff alleges that Defendant "has ordered" MDOC employees "to violate" a panoply of his rights by ordering him to complete MSOP again. (Compl., ECF No. 1, PageID.3.)

Plaintiff seeks injunctive relief.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While

---

[1] Plaintiff alleges that he previously completed MSOP on December 19, 2014. (Compl., ECF No. 1, PageID.3.) However, a prison grievance document he has attached to the complaint states that he completed MSOP on January 5, 2015. (*Id.*, PageID.7.)

2

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

3

Plaintiff has alleged claims arising under the Due Process Clause of the Fourteenth Amendment, the Ex Post Facto Clause of Article I, and the Double Jeopardy Clause of the Fifth Amendment. Plaintiff also alleges a claim under MDOC Policy Directive 03.03.130.

## III. Due Process

Plaintiff contends that his right to due process has been violated by his placement in the MDOC sex offender program. Presumably, Plaintiff complains that his participation in the program, or lack thereof, may affect his parole prospects with the MPB. *See, e.g.*, Mich. Comp. Laws § 791.233e(2)(b), (2)(d), (7)(b) (establishing objective criteria MPB should consider when making release decisions, including program performance, refusal to participate in programming ordered by the department, and parole failures).

The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). Thus, "[w]ithout a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 579 (1972)). Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest

4

is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

An order to participate in MSOP—and Plaintiff's decision whether to refuse to participate—merely affects his chances for parole. *See* Mich. Comp. Laws § 791.233e. Plaintiff's maximum sentence would result in discharge from MDOC on June 1, 2030.[2] Until Plaintiff has served his maximum sentence, he has no reasonable expectation of liberty. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. Therefore, an order to complete programming, which may affect

---

[2] Plaintiff has not provided his judgment of sentence. The Court takes judicial notice of Plaintiff's discharge date from his MDOC profile. *See* MDOC, *Offender Tracking Information Systems (OTIS) – Offender Profile*, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=200709 (last visited Feb. 20, 2020).

MPB's decision to consider Plaintiff for parole, implicates no federal right. In the absence of a liberty interest, Plaintiff fails to state a claim for a violation of his procedural due process rights.

## IV.     Ex Post Facto

Plaintiff further alleges that the MSOP, as applied to him, is in violation of the Ex Post Facto Clause of Article I of the Constitution.

The Ex Post Facto Clause prohibits a state from passing a law that (1) criminalizes an action done before the law was passed, which was innocent when done, (2) "'aggravates a crime, or makes it greater than it was, when committed,'" (3) "'changes the punishment'" to inflict greater punishment than the law provided when the crime was committed, or (4) "'alters the legal rules of evidence'" so that less or different testimony is required than at the time the offense was committed. U.S. Const., art I, § 10; *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001) (quoting *Calder v. Bull*, 3 U.S. 386, 390 (1798)). Thus, for legislation to violate the Ex Post Facto provision, a law must (1) "'apply to events occurring before its enactment,'" and (2) "'disadvantage the offender affected by it.'" *Dyer v. Bowlen*, 465 F.3d 280, 285 (6th Cir. 2006) (quoting *Lynce v. Mathis*, 519 U.S. 433, 441 (1997)).

Although the Ex Post Facto Clause, by its terms, applies only to legislation, the principles apply to judicial actions through the Due Process Clause. *See Hooks v. Sheets*, 603 F.3d 316, 21 (6th Cir. 2010) (citing *Marks v. United States*, 430 U.S. 188, 191 (1977). Moreover, because the principles of due process apply to a judicial action, the constitutionality of such action turns on the traditional due process principles of "notice, foreseeability, and, in particular, the right to fair warning," rather than the specific prescriptions of the Ex Post Facto Clause. *Id.* at 458-59.

6

Here, Plaintiff complains of his placement in MSOP, which he alleges was created in 2012, well after his conviction in 1995. Because legislation neither created MSOP nor dictated Plaintiff's placement in MSOP, the principles of due process apply. As discussed above, because Plaintiff lacks a liberty interest in parole, his claim again fails. Moreover, Plaintiff suffers no decipherable disadvantage. Instead, his placement in—and completion of—MSOP would likely be viewed favorably by MPB. Accordingly, Plaintiff has failed to state a claim under the Ex Post Facto Clause.

## V.     Double Jeopardy

Plaintiff's allegations concerning his double-jeopardy claim are limited and difficult to understand. Presumably, he argues that placement in the program subjects him to jeopardy, and, because he already completed MSOP in 2014, placement in the program again violates the Double Jeopardy Clause.

The Double Jeopardy Clause guarantees that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Although the language "jeopardy of life or limb" suggests the protection only applies to the most serious infractions, "the Clause has long been construed to mean something far broader than its literal language." *Breed v. Jones*, 421 U.S. 519, 527-28 (1975) (citing *Ex parte Lange*, 85 U.S. (18 Wall.) 163, 170-73 (1874)). The clause provides three separate guarantees: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense. *See North United States v. Dixon*, 509 U.S. 688, 696 (1993); *Illinois v. Vitale*, 447 U.S. 410, 415 (1980); *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).

However, the Double Jeopardy Clause does not apply to all punishments. "[J]eopardy describes the risk that is traditionally associated with a criminal prosecution." *Breed*, 421 U.S. at 528 (citing *Price v. Georgia*, 398 U.S. 323, 326, 329 (1970)). For that reason, the Supreme Court has determined that the Double Jeopardy Clause "'protects only against the imposition of multiple *criminal punishments* for the same offense and then only when such occurs in successive proceedings.'" *United States v. Beaty*, 147 F.3d 522, 524 (1998) (quoting *Hudson v. United States*, 522 U.S. 93, 99 (1997)).

Plaintiff utterly fails to allege a Double Jeopardy violation. Plaintiff's release prior to his maximum sentence discharge date in 2030 remains within MPB's discretion. *See* Mich. Comp. Laws § 791.233. Moreover, MPB "must not" grant parole absent "reasonable assurance . . . that the prisoner will not become a menace to society or to the public safety." § 791.233(1)(a). According to documents attached to his complaint, Plaintiff previously completed MSOP in 2015, was paroled in 2017, and returned to prison "for violations that included sexual elements" in early 2019. (Compl., ECF No. 1, PageID.7.) Having already violated parole conditions once before, ordering Plaintiff to complete MSOP a second time appears wholly calculated to reduce the risk Plaintiff poses to society or to the public safety. Completion would, no doubt, provide some assurance to MPB to that effect. This is hardly the type of punishment the Double Jeopardy Clause was meant to protect against. Accordingly, Plaintiff has failed to state a claim under the Double Jeopardy Clause.

## VI. State Law Claims

Plaintiff has alleged a violation of MDOC Policy Directive 03.03.130. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215

(6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendant violated state law therefore fails to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claim will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss without prejudice Plaintiff's remaining claim arising under state law. The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). The Court does not certify that an appeal would not be in good faith.

Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from

proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   February 28, 2020                /s/ Robert J. Jonker
                                                                      ROBERT J. JONKER
                                                                       CHIEF UNITED STATES DISTRICT JUDGE